# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN HAVENS,<br><br>   Plaintiff,<br><br>   v.<br><br>LEONG PARTNERSHIP,<br><br>   Defendant. | Case No. 17-cv-02882-WHO<br><br>**ORDER ON APPEAL**<br>Re: Dkt. No. 1 |

Appellant Warren Havens ("Havens") filed an involuntary bankruptcy petition against the Leong Partnership on August 24, 2016. Appellee Dr. Arnold Leong ("Leong") moved to dismiss that petition and eventually secured summary judgment arguing, in part, that the "Leong Partnership" is a non-existent entity. The Bankruptcy Court granted Leong's motion for attorneys' fees and costs under 11 U.S.C. § 303(i). Havens appeals the order granting fees and costs, asserting that the Bankruptcy Court erred in granting the award because § 303(i) only allows fees and costs to be granted to a "debtor" and Leong was not the named debtor, and arguing in any event that the amount of fees and costs awarded was unreasonable. I conclude that the Bankruptcy Court was within its powers to determine that Leong was the debtor for purposes of the petition and that, in light of the 20% reduction in fees imposed on two of Leong's three law firms, the amount of attorney's fees awarded was not an abuse of discretion. The Bankruptcy Court's Order Granting Fees and Costs Under Bankruptcy Code § 303(i) is AFFIRMED.

## BACKGROUND

In 1998, Havens and Leong began a business relationship involving purchase of radio spectrum licenses from the Federal Communications Commission ("FCC"). Bankruptcy Court Order Granting Summary Judgment ("MSJ Order") at 3 [Dkt. No. 4-121]. A disagreement arose about the existence of an oral agreement regarding the percentage of ownership interest each had

in the business relationship. *Id.* That disagreement has resulted in more than fifteen years of litigation, culminating most recently with a Receiver being appointed by the Alameda County Superior Court to preserve the value of the FCC licenses on a request by Leong. Appellee's Supplemental Appendix at 12 [Dkt. No. 7-1].

Following the appointment of the Receiver, Havens filed two Chapter 11 cases. MSJ Order at 3-4. This appeal arises from the second Chapter 11 case, where Havens filed an involuntary Chapter 11 petition ("Petition") against the "Leong Partnership." The existence of the "Leong Partnership" was heavily disputed in the Bankruptcy Court proceedings. Leong, in his individual capacity, moved to dismiss the Petition because the named debtor, the Leong Partnership, did not exist and Bankruptcy Code § 303(a)(B) requires at least three creditors to file an Involuntary Petition, but Havens' Petition was filed only by two. Mot. to Dismiss at 2 [Dkt. No. 4-62]. Havens opposed, arguing that § 303(a)(B) was satisfied because at the time of the filing of the Petition, there were three petitioning creditors and that the Leong Partnership did exist. Oppo. to Mot. to Dismiss at 4, 8 [Dkt. No. 4-75]. At the hearing on the Motion to Dismiss, on September 22, 2016, U. S. Bankruptcy Judge Charles Novack denied the Motion to Dismiss, but suggested that Leong "answer the Petition" and file a motion for summary judgment to raise the argument that the Leong partnership does not exist. Tr. Sept. 22, 2016 at 12 [Dkt. No. 4-87].

After Leong filed an Answer to the Petition, Answer [Dkt. No. 4-85], Havens argued in a Status Conference that Leong, as an individual, was not authorized to respond or make filings on behalf of the Leong Partnership because Leong denied there ever was a Leong Partnership (and, therefore, could not be a general partner who could represent the Partnership). Tr. Oct. 31, 2016 at 4 [Dkt. No. 4-92]. Havens asked the Bankruptcy Court to enter an order for relief because the Petition was not timely responded to. *Id*. at 3. Judge Novack rejected that argument and allowed Leong to file on behalf of the alleged debtor, reasoning that while Bankruptcy Rule 1011 provides that only "the debtor" named in the petition may contest the petition, there was a question whether the debtor exists and "Leong is as close to being the debtor as anyone or anything." *Id.* at 4-5. Judge Novack concluded "that for purposes of this case, Dr. Leong's motion to dismiss and his answer were filed on behalf of this alleged debtor. And if I need any authority other than common

2

sense, I think I can look to Section 105 of the Code to ensure that there's no abuse of process here or potential abuse of process." *Id*. at 5.[1]

Leong then moved for summary judgment, arguing that the Petition must be rejected because the Leong Partnership did not exist and that there was, at least, a "legitimate dispute" over whether anything was owed to the petitioning creditors, rending the Petition impermissible. In opposition, Havens asserted that the Leong Partnership is an existing partnership comprised of Leong, Mark Griffith, and Channing Jones. MSJ Order at 8. In a series of declarations, Havens proffered the reasons why he believed the Leong Partnership exists. Havens Decl. for Oppo. ¶ 2a [Dkt. No. 4-107]. However, both Leong and Griffith filed declarations stating that the Leong Partnership never existed. *Id.* at 9. Ultimately, the Bankruptcy Court concluded that a bona fide dispute existed regarding the existence of the "Leong Partnership," which made the pursuit of the Involuntary Petition impermissible and led to the grant of Leong's motion for summary judgment. *Id.* at 11.[2]

Leong then filed a motion for attorneys' fees and costs under Bankruptcy Code § 303(i) as the prevailing party to the Involuntary Bankruptcy Petition. Mot. for Fees at 1 [Dkt. No. 4-123]. Havens objected, arguing that as a "non-debtor" Leong had no right to fees under Section 303(i) because fees can only be awarded to a "debtor." Oppo. for Fees at 1 [Dkt. No. 4-131].

In its order, the Bankruptcy Court acknowledged that "serious questions of fact exist regarding the very existence of the Leong Partnership." Bankruptcy Court Order Granting Fees and Costs ("Fee Order") [Dkt. No. 1-3] at 3. The court determined, based on the evidence filed in the Involuntary Petition proceedings, that Havens "had filed the Petition to interfere with the

---

[1] § 105 of the Bankruptcy Code provides "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[2] The other ground on which the Bankruptcy Court granted Leong's motion for summary judgment was that there was a bona fide dispute regarding the amount and validity of the claims the creditors sought. MSJ Order at 12-14. Havens appealed the Motion for Summary Judgment Order to the Bankruptcy Appellate Panel, where it is fully briefed and awaiting decision. Appellee Brief at 9 [Dkt. No. 7]; *Havens v. Leong*, Case No. 17-1015 9th Cir, BAP.

3

receiver's efforts to sell the radio spectrum licenses" and that "only Dr. Leong was affected by the involuntary petition, and he was its target. Dr. Leong was therefore caught in a 'Catch 22': acknowledge the existence of the Leong Partnership and his role as a general partner in order to respond to the involuntary petition and obtain fees and costs under § 303(i), or deny the above and respond (somehow) to the involuntary to preserve the Alameda County Superior court receivership." *Id*. at 4.

The Bankruptcy Court determined that under Bankruptcy Code § 101(13),[3] Leong was "the debtor" and that Bankruptcy Rule 9001[4] authorized Leong to respond to the Petition. It concluded that "given the serious questions regarding the existence of the Leong Partnership and the identity of the true target of the involuntary petition, Dr. Leong is the debtor herein under Bankruptcy Code 101(13)." Fee Order at 4.

Havens also objected to the amount and reasonableness of the attorneys' fees and costs sought by Leong, who sought recovery for time incurred by three separate law firms (when only one had made an actual appearance in the bankruptcy proceedings). Havens contended a 60% reduction of fees was warranted because: (1) the time spent on tasks was excessive and the result of duplication of efforts; (2) there were multiple, unnecessary attorneys at hearings, meetings, and conferences; (3) non-bankruptcy attorneys billed time researching basic bankruptcy issues; (4) firms used block billing time; and (5) the firms billed for travel time. Oppo. for Fees at 9-10. The Bankruptcy Court held that the firm representing Leong in the bankruptcy proceedings (the Pachulski firm) could recoup all fees in full, but the two litigation firms who had not made an appearance (Bertrand and Shopoff firms)[5] would have their fees reduced by 20% bringing the total

---

[3] § 101(13) provides "[t]he term "debtor" means person or municipality concerning which a case under this title has been commenced."

[4] Rule 9001, General Definitions, provides "(5) "Debtor." When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: . . . (B) if the debtor is a partnership, "debtor" includes any or all of its general partners or, if designated by the court, any other person in control."

[5] The Bertrand, Fox, Elliot, Osman & Wenzel and Shopoff Cavallo & Kirsch, LLC firms were "litigation counsel" representing Leong in the Alameda Superior Court and Receivership proceedings. The Bankruptcy Court noted that litigation counsel assisted Pachulski, Stang, Ziehl

4

attorneys' fees award down to $262,070.50. Fee Order at 6-7. As for costs, the Bankruptcy Court awarded only the costs incurred by the Pachulski firm that were recoverable under 28 U.S.C. § 1920, totaling $562.60. *Id.* at 8.

Before me is Havens's appeal of the Bankruptcy Court's Fees and Costs Order. He argues that the Bankruptcy Court erred by allowing Leong, as a non-debtor, to recover attorneys' fees and costs under § 303(i) and that the fees and costs awarded were unreasonable. Appellant Br. at 2.[6]

**LEGAL STANDARD**

District courts have jurisdiction to hear appeals from the final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1). Findings of fact are reviewed for clear error. Fed. R. Bankr. P. 8013; *In re Acequia, Inc.*, 787 F. 2d 1352, 1357 (9th Cir. 1986). Legal conclusions and mixed questions of law and fact are reviewed *de novo*. *In re Lee*, 179 B.R. 149, 155 (9th Cir. B.A.P. 1995).

**DISCUSSION**

**I. THE BANKRUPTCY COURT DID NOT ERR IN AWARDING ATTORNEYS' FEES AND COSTS**

Havens contends that Leong cannot seek costs and fees under Bankruptcy Code § 303(i) as that section only allows "the debtor" to recover costs and fees. Appellant Br. at 17. He asserts that even though the Bankruptcy Court allowed (and even encouraged) Leong to answer to the Involuntary Petition and move for summary judgment on the Petition, those actions do not make Leong the debtor for purposes of § 303(i). *Id*. at 8. He also notes that while the Bankruptcy Court discussed the evidence regarding the Leong Partnership's existence, the court never made a finding whether the named debtor, the Leong Partnership, existed. *Id*. at 14.

Bankruptcy Code § 303(i) provides:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may

---

& Jones LLP with the factual and legal background needed to defend the Petition.

[6] Havens also appeals the $562.60 award of costs. Appellant Br. at 30. Leong does not "challenge that portion of the appeal." Appellee Brief at 11 n.5. Therefore, the award of $562.60 in costs is REVERSED.

5

grant judgment--
>   (1) against the petitioners and in favor of the debtor for--
>       (A) costs; or
>       (B) a reasonable attorney's fee; or
>   (2) against any petitioner that filed the petition in bad faith, for--
>       (A) any damages proximately caused by such filing; or
>       (B) punitive damages.

11 U.S.C.A. § 303. Havens contends that under the plain language of the statute, only "the debtor" is entitled to attorney's fees and costs. Appellant Br. at 18.

Relying on *Law v. Siegel*, __ U.S. __, 134 S. Ct. 1188 (2014), Havens argues that a bankruptcy court cannot contradict an express provision of the Bankruptcy Code to attempt to reach an equitable result under § 105(a). Appellant Br. at 9-10; *Law,* 134 S. Ct. at 1191. In *Law*, the Supreme Court held that the bankruptcy court exceeded its authority by using § 105(a) to override another section of the Bankruptcy Code. *Law*, 134 S. Ct. at 1198.[7] Here, Havens notes that the Bankruptcy Court below relied on § 105 to conclude Leong had standing to answer the Petition and to conclude that Leong – who constantly maintained he was not "the debtor" – was able to recover fees under § 303(i). However, given § 303(i)'s express limitation of those who can seek fees (only "the debtor"), the Bankruptcy Court could not rely on its equitable powers under § 105 in contravention of the express limits of § 303(i). Appellant Br. at 22.

Havens also relies on *In re Miles,* 430 F. 3d 1083, 1093 (9th Cir. 2005) to argue that the Ninth Circuit has affirmed that under § 303(i) only the actual debtors named in involuntary petitions, and not third parties, can be awarded damages. *In re Miles,*. In *Miles*, involuntary bankruptcy petitions were brought, separately, against Rodney and Ann Miles. *In re Miles*, 430 F. 3d at 1086. The Bankruptcy Court dismissed the bankruptcy proceedings, finding the petitions were filed in bad faith. *Id.* Thereafter, Ann and her daughters brought cases in state court seeking damages on behalf of the daughters as a result of the petitions filed against their parents, and on behalf of Ann as a result of the petitions filed against her husband. *Id.* The state court cases were removed to Bankruptcy Court and the Bankruptcy Court dismissed the cases on the basis that

---

7 In *Law*, the Supreme Court held that the bankruptcy court did not have powers under § 105 or "inherent powers" to take an action that was elsewhere prohibited by the code; in that case placing a "surcharge" on an amount protected under the homestead exemption to pay for opposing side's attorney fees. *Id*. at 1193.

6

Bankruptcy Code § 303(i) does not allow third parties to seek damages caused by the filing of involuntary petitions. *Id* at 1087. The Ninth Circuit reviewed the language in § 303(i) and noted that an argument could be made that while (i)(1) expressly limits to fees and costs "to debtors," subsection (i)(2) (addressing petitions brought in bad faith) did not expressly mention "debtors" and therefore it was not similarly limited. *Id*. at 1093. However, after reviewing the legislative history – confirming that Congress intended only "debtors" to recover damages related to involuntary petitions and expressing concerns that allowing third-parties to recover could invite abuse of the involuntary petition process – the Ninth Circuit confirmed that only "debtors" had standing to seek damages under both subsections of § 303(i). *Id*. at 1093-94.

*Miles* is significantly different from this case. In *Miles* there was an actual debtor, yet the debtors' relatives were the ones attempting to claim damages under § 303(i) caused by involuntary petitions as to which they were not parties. Here, there was a significant question regarding the very existence of the named debtor, the Leong Partnership. The Bankruptcy Court appropriately determined that Leong was the only person/entity who could respond to and contest the Involuntary Petition, and allowed him to answer the Petition and move for summary judgment.[8] Fee Order at 3; Appellee Br. at 20 [Dkt. No. 7]. As recognized by the Bankruptcy Court, there must be a debtor in bankruptcy cases. Leong was not a third party watching as another debtor participated in the Involuntary Petition; throughout the case Leong was the only respondent as debtor.

Although, as the Bankruptcy Court recognized, "there is little case law addressing situations like this" (Fee Order at 4), there are at least three cases that support the Bankruptcy Court's order. In *In re Ed Jansen's Patio, Inc.*, cited by the Bankruptcy Court and relied on by Leong here, the named debtor was out of business, had no employees, and no longer had assets. *In re Ed Jansen's Patio, Inc.*, 183 B.R. 643, 644 (Bankr. M.D. Fla. 1995). The Circuit Court appointed an Assignee for Benefit of Creditors and, after the Bankruptcy Court dismissed the involuntary petition finding the petitioning creditors were not actually creditors, the court granted

---

[8] The Bankruptcy Court cited Bankruptcy Code § 101(13) and Rule 9001 to authorize Leong to answer the Petition. Fee Order at 4.

7

United States District Court
Northern District of California

1  attorney's fees and costs. *Id.* The court held that it was an unusual situation and there must be a
2  remedy for the improper filing of an involuntary petition and, since the estate's assets were
3  reduced by paying for the defense, the costs should be recoverable by the petitioning creditor. *Id.*
4  In *In re Synergistic Technologies, Inc.*, a board member of a company, that was no longer
5  in operation, defended against an involuntary petition brought by two other board members. *In re*
6  *Synergistic Technologies, Inc.*, 2007 WL 2264700 *1 (Bank. N.D. Tex. 2007). That court granted
7  fees and costs under § 303(i) to the board member, holding that when there is a corporate
8  governance deadlock, the shareholder can respond on behalf of the debtor and recover fees. *Id.* at
9  *5.

10 And in *In re Fox Island Square Partnership*, the petitioners filed an involuntary petition
11 against the Fox Island Square Partnership. *In re Fox Island Square Partnership*, 106 B.R. 962,
12 965 (Bankr. N.D. Ill. 1989). The petitioners collectively held a 75% interest in the partnership.
13 *Id.* A general partner of the partnership (Frey) answered and filed a motion to dismiss. *Id.* The
14 case went to trial and the bankruptcy court denied the involuntary petition and dismissed the case
15 since the partnership *was* paying its debts and the debt discussed in the involuntary petition was
16 *not* the partnership's debt. *Id.* at 966. Frey filed a request for the recovery of attorney's fees and
17 costs pursuant to § 303(i). *Id.* The bankruptcy court found that for all intents and purposes Frey
18 was attempting to save the partnership by representing the partnership in the case and, therefore,
19 could seek an award under § 303(i). *Id.* at 967.

20 Havens argues that these cases predate the Ninth Circuit ruling in *Miles* and the U.S.
21 Supreme Court decision in *Law* and asserts that they should not be considered precedent because
22 they are from outside the Ninth Circuit. Appellant Br. at 21. But neither *Miles* nor *Law* addressed
23 the situation in these cases, where there was a dispute over the existence of "the debtor" and the
24 movant (here, Leong) was determined to be the closest thing to a debtor and, therefore, entitled to
25 fees under § 303(i). I find the rationale of *Jansen*, *Synergistic*, and *Fox* are not undermined by
26 *Miles,* which addressed a wholly different factual predicate. *Miles* had a debtor that participated in
27 the involuntary petition proceedings. In *Jansen*, *Synergistic*, and *Fox,* the Bankruptcy Court
28 allowed a party closely tied to the case, even if not the party named in the involuntary petition, to

8

contest the involuntary proceedings and recover their attorney's fees and costs. Similarly, Leong was as close to the named debtor as possible, was (as found by the Bankruptcy Court) to be the party in interest and was the party whose efforts in the underlying Receivership Havens was attempting to thwart. Leong was not a "third party" as were the spouse and daughters in *Miles*.

*Law* is inapposite because, by defining Leong as the debtor and granting him fees and costs, the Bankruptcy Court was not using its equitable powers under § 105 to contravene an express limitation in the Bankruptcy Code.[9] The Bankruptcy Court recognized Leong as "the debtor" by examining the definitions of the term "debtor" in Bankruptcy Code § 101(13) (the person upon whom the bankruptcy case has been brought) and Federal Rule of Bankruptcy Procedure 9001 (if the named debtor is a partnership the court can designate a person in control of the partnership to perform any act required by the debtor).[10] Fee Order at 4. The Bankruptcy Court was within its powers to do so and, subsequently, award fees under § 303(i).[11]

## II. THE FEES AWARDED WERE REASONABLE

Leong's request for fees included time billed by three law firms who worked on contesting the Involuntary Petition. Fee Order at 6. The general bankruptcy counsel (Pachulski) billed $146,558.50 in fees and the two litigation firms which represent Leong in the Alameda County Superior Court proceedings (Bertrand and Shopoff) billed $52,500 and $91,890 respectively.

---

[9] Havens also relies on *In re Micr Toner International LLC*, 2017 WL 766899 (Nevada) (Bankr. C.D. Cal., Feb. 24, 2017, No. 2:16-BK-24024-ER), but that case in inapposite. In that case, there was an "Alleged Debtor" named in the involuntary petition, but that entity had been legally dissolved and under Nevada law could not sue or be sued. In that circumstance, the bankruptcy court would not recognize as "the debtor" related "trade names" entities which were themselves "separate legal entities that are distinct from the Alleged Debtor." *Id*. at *7.

[10] Havens argues that in situations where non-debtors have been designated to perform duties or testify on behalf of a debtor under Rule 9001, courts have declined to award fees or compensation. Appellant Br. at 25. But in the cases relies on by Havens, the courts refused to award compensation to "to former directors for traditional corporate duties" *In re Roco Corp*., 37 B.R. 770, 773 (Bankr. D.R.I. 1984) and for voluntary debtors performing services required under the code. *See In re Riker Industries, Inc*., 122 B.R. 964, 974 (Bankr. N.D. Ohio 1990).

[11] Leong points out that Bankruptcy Rule 1011 also provides a route by which he could be recognized as "the debtor" for purposes of § 303(i), as Havens himself alleged that Leong was a general partner of the Leong Partnership.[11] Appellee Br. at 14. Additionally, Leong contends that because his personal assets were at risk if he did not contest the Petition, § 105 – whose whole purpose is to help bankruptcy courts avoid injustice, the risk here – allowed the Bankruptcy Court to consider Leong "the debtor" entitled to fees under § 303(i).

9

Mot. for Fees at 16, 64, 85. The Bankruptcy Court found that Leong needed that expertise to address the issues, and that a significant amount of time was "necessary to understand the more than decade long litigation between Havens and Dr. Leong, Havens's litigation with the other alleged Leong Partnership partners, and the relationship between the involuntary bankruptcy proceeding and the Alameda County Superior Court receivership." Fee Order at 7. It concluded that Pachulski's fees were reasonable and awarded those fees in full. Fee Order at 6-7.

However, the Bankruptcy Court found multiple issues with the request with respect to the litigation firm fees. Specifically:

> Dr. Leong's counsel did not explain why both litigation firms needed to brief Pachulski on the Alameda County Superior court litigation. Both firms participated in numerous conference calls with Pachulski, and reviewed and revised virtually all of Pachulski's pleadings. The Betrand Fox and Shopoff firms also assisted Pachulski in researching bankruptcy issues, and regularly billed time reviewing this court's routine orders. While this court does not question the litigation expertise and integrity of these firms, neither of them have Pachulski's bankruptcy experience, and they should have limited their time to ensuring that Pachulski fully understood the pre-petition litigation and accurately described it in its pleadings. While this court presumes that they reviewed Pachulski's pleadings with this in mind, why were two sets of attorneys necessary for this task? Their time records are also clouded by their clumping of time. It is difficult to assess the reasonableness of work done when the time spent on discrete projects are commingled.

As a result, the Bankruptcy Court reduced the litigation firms' fees by 20%. *Id*. at 7. Fee Order at 7.[12]

Havens asserts numerous grounds for error: the Bankruptcy Court did not address all of Havens' arguments as to why the fees billed were excessive; the amount of its reduction (20%) is "inconsistent" with the rationale the Court did recognize; excessive duplication and block billing; and, under *Gates v. Duekmejian*, 987 F. 2d 1392 (9th Cir. 1992), the Court was required to but failed to provide a "concise but clear" rationale supporting the blanket 20% reduction. *Gates,* 987 F. 2d at 1400. Havens requests that if I conclude that the Bankruptcy Court committed no error in awarding fees, I should remand the case back to the Bankruptcy Court to reassess the fees and

---

[12] The Bankruptcy Court reduced the two litigation firm's fees by twenty percent awarding $42,000 and $73,512 respectively. *Id*

provide a clear and concise explanation of any award. Appellant Br. at 29.

In the Ninth Circuit, a court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Here, the Bankruptcy Court went further, imposing a 20% reduction because of the duplication of effort and block billing problems it identified. Reductions of fees between 10 - 30% for block billing have been approved. *See, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (recognizing the block billing may inflate fees by 10-30% and approving a 20% reduction for block-billed time). Considering the Bankruptcy Court's order, as well as the lack of specificity in the arguments made to me,[13] I conclude that the Bankruptcy Court appropriately reduced the fees sought by the two litigation firms by 20% to account for the concerns identified (the block billing by the Shopoff firm and by the duplication of effort by both firms).[14]

As to the arguments Havens believes were unaddressed or inadequately addressed by the Bankruptcy Court, Havens reiterates his objections to the block billing by Shopoff and the duplication of efforts (both of which have been addressed), as well the unnecessary work performed by the litigation firms researching bankruptcy law. *Id.* at 28-29. However, the "'concise but clear' explanation requirement mandates that the [trial] court explain the reasons for its fees award; it does not demand that the court make findings as to each of defendants' specific objections to plaintiffs' billing judgment." *Gates*, 987 F.2d at 1400. The Fee Order is sufficient in this regard.

I conclude that the Bankruptcy Court did not abuse its discretion in only reducing the litigation counsel's fees by 20% and that the Court provided a clear, concise, and adequate

---

[13] On this appeal, Havens does not separate out time billed by the litigation firms to identify *specific instances* where the time billed was excessive or duplicative, either standing apart from the bankruptcy counsel's fees or considered in conjunction with the bankruptcy counsel's time. Simply stating that all three firms billed a total of 220.2 hours on the summary judgment motions does not show *how* the litigation firms' time entries were excessive or duplicative.

[14] If anyone's ox was gored by an across the board 20% reduction of the litigation firms' fees, it would be Leong because the Bertrand firm did not engage in block billing, only the Shopoff firm did. That said, the 20% mark is also supported by the Bankruptcy Court's concerns of duplication of effort by Bertrand and Shopoff.

11

explanation of its rationale.

## CONCLUSION

The Bankruptcy Court had authority to consider Leong "the debtor" given the unusual situation presented in this case and to award fees and costs under § 303(i). The amount awarded was reasonable and adequately explained. As Leong does not contest the reduction in costs, costs of $562.60 are reduced from the overall award. Otherwise, the Bankruptcy Court's Fee Order is AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 9, 2018

William H. Orrick
United States District Judge